ANDREW JAMES KOSTER,  )
      Plaintiff,  )
  )     No. 1:23-cv-718
v.  )
  )     Honorable Paul L. Maloney
KALAMAZOO COUNTY, *et al.*,  )
      Defendants.  )
  )

## ORDER RESOLVING MOTIONS TO DISMISS

This matter comes before the court on Defendants' motions to dismiss. (ECF Nos. 16, 18). Plaintiff filed responses in opposition to both motions. (ECF Nos. 21, 22). Defendants filed reply briefs. (ECF Nos. 24, 25) The court will grant the motions as explained below.

## I. Background

Defendants' motions attack the sufficiency of Plaintiff's first amended complaint, and they raise qualified immunity as a defense. The following facts stem from Plaintiff's first amended complaint. (ECF No. 14). Plaintiff, Andrew Koster, is a resident of Wayne County, Michigan. The Defendants are Deputy David Scholten, Deputy Jeff Nichols, Deputy Tanner Boysen, Deputy Collin Juszczyk, Deputy Amber Holmes, Officer Lindsey Denharder, who were all police officers who allegedly interacted with Plaintiff.

On April 12, 2021, Plaintiff "was involved with a minor family issue outside of his family home" in Comstock, Michigan, which is situated in Kalamazoo County. (ECF No. 14 at PID 128). The Kalamazoo County Sheriff's Department was notified and responded to

1

the scene. Plaintiff was surrounded by Defendant officers with their weapons drawn, and the deputies waited for the arrival of a K-9 unit. (*Id.*). Defendants set up a perimeter to ensure Plaintiff could not flee. (*Id.*).

Plaintiff "was knocked to the ground and while being apprehended by multiple officers Defendant Denharder deployed 'K9 Lex' which proceeded to mail, maim, and viciously attack Plaintiff, wherein he began bleeding profusely from his injuries." (*Id.* at PID 129). Plaintiff alleges a slew of injuries, including severe bodily injury, shock and emotional damages, as well as impaired earning capacity. (*Id.*).

Plaintiff brings several counts against the Defendants: (1) Gross Negligence, (2) Assault and Battery, (3) Malicious Prosecution, (4) Intentional Infliction of Emotional Distress, (5) Negligent Infliction of Emotional Distress, (6) "42 U.S.C. § 1983," and (7) "Federal Law Claims."

When deciding Rule 12(b)(6) motions to dismiss, courts are typically not permitted to consider materials outside the pleadings. *See Bell v. City of Southfield*, 37 F.4th 362, 364 (6th Cir. 2022). However, courts may consider "exhibits attached [to the complaint], public records, items appearing in the record of the case[,] and exhibits attached to defendant's motion to dismiss so long as they are referred to in the [c]omplaint and are central to the claims contained therein," without converting the motion to dismiss to a motion for summary judgment. *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). Moreover, the Sixth Circuit has confirmed that it is permissible for courts to consider video footage of the alleged incident in qualified-immunity cases. *See Bell*, 37 F.4th at 364; *Bailey v. City of Ann Arbor*, 860 F.3d 382, 387 (6th Cir. 2017).

The court may consider the video footage of the incident in this case for two reasons: (1) the video footage is central to the claims contained in the amended complaint, *see Bassett*, 528 F.3d at 430; and (2) Defendants raised the defense of qualified immunity. The court should consider whether Defendants should be relieved of the "costs and burdens of suit . . . at the earliest possible stage," especially if the video footage contradicts the claims alleged in the complaint. *Bell*, 37 F.4th at 364.

Defendant Denharder attached her body-worn camera ("BWC") footage to her motion to dismiss as an exhibit. (ECF No. 19-2). Officer Denharder arrived on scene with her K-9. (*Id.* at 00:10). As Officer Denharder approached the residence, several Kalamazoo County Sheriff's Deputies were already on scene and around the residence. (*Id.* at 00:21). As Officer Denharder approached the group of Deputies, another officer can be heard warning Plaintiff that "we will come in with the dog and you will get bit." (*Id.* at 00:19-00:23). Officer Denharder spoke with the other officers for approximately 40 seconds while standing in the driveway of the home. (*Id.* at 00:23-01:06). Then, Plaintiff ran out of the residence and began sprinting through the front yard at an angle away from the group of officers. (*Id.* at 01:07). One Deputy drew his firearm (*Id.*).

Seconds later, the officers began chasing Plaintiff. Officer Denharder released the K-9 when Plaintiff was 15 to 20 feet away from the home and in the front yard. (*Id.* at 01:08). Plaintiff ran out of the front yard and into the street where he fell. (*Id.* at 01:08-1:13). It is not clear from the BWC whether Plaintiff fell or was taken down by the K-9. (*Id.*). While in the middle of the street, Plaintiff stood briefly, stumbled, and fell on the opposite side of the street with the K-9 on his heels. (*Id.* at 01:13-1:14). At this point, the officers were able to

grab Plaintiff. (*Id.* at 1:15). Over a period of a few seconds, the officers were able to gain control of the K-9 as they attempted to handcuff Plaintiff. (*Id.* at 1:15-1:21). Officer Denharder then left Plaintiff and took control of the K-9 from another officer as other officers were on top of Plaintiff. (*Id.* at 1:27).

Officer Denharder led the K-9 to Plaintiff's foot, where the K-9 bit Plaintiff's foot. (*Id.* at 1:31). Plaintiff was wearing cowboy boots that shielded his feet and lower shin. (*Id.*). It is unclear whether the K-9 bit only Plaintiff's boot or his actual foot. During this time, Officer Denharder can be heard saying "put [the K-9] on the leg until he complies." (*Id.* at 1:27-1:31). The K-9 bit Plaintiff's foot/boot for approximately 15 seconds while other officers attempted to handcuff Plaintiff. (*Id.* at 1:29-1:46). Once the officers handcuffed Plaintiff, Officer Denharder commanded the K-9 to release Plaintiff, and the dog was removed from Plaintiff's leg. (*Id.* at 1:46). Plaintiff was arrested.[1]

## II. Legal Standard

A motion to dismiss for failure to state a claim under Rule 12(b)(6) tests whether a cognizable claim has been pled in the complaint. *Scheid v. Fanny Farmer Candy Shops, Inc.,* 859 F.2d 434, 436 (6th Cir. 1988). To survive a motion to dismiss, a plaintiff must allege facts sufficient to state a claim for relief that is "plausible on its face" and, when accepted as true, are sufficient to "raise a right to relief above the speculative level." *Mills v. Barnard,* 869 F.3d 473, 479 (6th Cir. 2017) (citation omitted). "The complaint must 'contain either direct

---

[1] Following the encounter, Plaintiff was arrested and charged with two felony counts of resisting and obstructing a police officer in violation of Mich. Comp. Laws § 750.81d, and one charge of breaking and entering in violation of Mich. Comp. Laws § 750.115. (ECF No. 19-3). Plaintiff ultimately pled nolo contendere to an amended charge of attempted resisting and obstructing, with the remaining charges dismissed. (ECF No. 19-4).

or inferential allegations respecting all material elements necessary for recovery under a viable legal theory.'" *Kreipke v. Wayne State Univ.*, 807 F.3d 768, 774 (6th Cir. 2015) (citation omitted). To resolve a motion to dismiss, a court must accept as true all factual allegations, but it need not accept any legal conclusions. *Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 369 (6th Cir. 2011).

### III. Analysis

A. Motion to Dismiss (ECF No. 16).

Defendants Kalamazoo County, Deputies Nichols, Scholten, Holmes, Boysen, and Juszczyk filed a motion to dismiss. They assert qualified immunity, argue Plaintiff failed to state a claim, and assert governmental immunity.

1. 12(b)(6) for Deputy Defendants

Defendants argue that the first amended complaint failed to plead that Defendant Deputies Scholten, Nichols, Boysen, Juszczyk, or Holmes did anything, or were even at the scene. Plaintiff failed to address this argument in his response. (ECF No. 22).

A review of the complaint shows that Defendants are correct. Plaintiff did not plead with any degree of specificity. "An officer's 'mere presence' at a search [or seizure], 'without a showing of direct responsibility for the action, will not subject an officer to liability.'" *Alexander v. Carter for Byrd*, 733 F. App'x 256, 262 (6th Cir. 2018) (quoting *Binay v. Bettendorf*, 601 F.3d 640, 650 (6th Cir. 2010); *see also Gibson v. Matthews*, 926 F.2d 532, 535 (6th Cir. 1991) ("[A claim] must be based on the actions of that defendant in the situation that the defendant faced, and not based on any problems caused by the errors of others, either defendants or non-defendants."). "A critical aspect of the § 1983 and *Bivens* universe

is that to be held liable, a plaintiff must demonstrate 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'" *Robertson v. Lucas*, 753 F.3d 606, 615 (6th Cir. 2014) (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 676 (2009)). Plaintiff failed to plead with any specificity what Defendant Deputies Scholten, Nichols, Boysen, Juszczyk, or Holmes did, if anything, during their alleged interaction with Plaintiff.

Plaintiff's brief makes vague references to "Defendants" but does not explain with any degree of specificity the factual circumstances giving rise to his claims. (ECF No. 22 at PID 235). Per the amended complaint and BWC video, Officer Denharder was the officer who deployed the K-9. Plaintiff's allegations are so vague, conclusory, and without factual support that all claims against Deputies Nichols, Scholten, Holmes, Boysen, and Juszczyk fail under Federal Rule of Civil Procedure 12(b)(6).

2. Qualified Immunity Deputy Defendants

The issue is whether the individual Deputies are entitled to qualified immunity for the actions resulting in Plaintiff's alleged injuries. Qualified immunity shields "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 335 (1986). Qualified immunity shields officials from civil liability so long as their conduct "'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). To overcome qualified immunity, a plaintiff must (1) plead a constitutional violation, and (2) the alleged constitutional violation must be "clearly established." *Pearson*, 555 U.S. at 232. The high Court has repeatedly told us "not

to define clearly established law at a high level of generality." *Mullenix v. Luna*, 577 U.S. 7, 12 (2015). The question is "'whether the violative nature of *particular* conduct is clearly established.'" *Id.* (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011)).

Defendants raised qualified immunity. In response, Plaintiff merely states that "Defendant Deputies are not subject to qualified immunity." (ECF No. 22 at PID 235). Plaintiff dedicated most of his brief to block quoting an unpublished Sixth Circuit opinion: *Rainey v. Patton*, 534 F. App'x 391 (6th Cir. 2013).

*Rainey* concerned whether qualified immunity protects officers that employ police dogs against unarmed suspects detained for a minor traffic offense, who were on the ground and not attempting to flee. *Id.* at 397. In *Rainey*, the court held that it was unreasonable for an officer to employ a K-9 because (1) that plaintiff had "committed a minor traffic offense"; (2) the defendant officer had just "come from responding to a domestic call placed by the plaintiff"; (3) "nothing in the record" indicated that the plaintiff was a threat to officer safety; (4) the male officer dwarfed the female plaintiff in size; (5) while the plaintiff was slow to stop, she drove slowly to find a place to park; (6) and there was not an "inordinate" delay in the plaintiff's compliance with the defendant officer's commands. *Id.* at 395. The circuit reversed the qualified immunity finding for the officer. *Id.* at 397.

Deputies Nichols, Scholten, Holmes, Boysen, and Juszczyk are entitled to qualified immunity because Officer Denharder was the officer who deployed the K-9. Additionally, *Rainey* is readily distinguishable from the instant case. Plaintiff was not stopped for a minor traffic offense. Plaintiff was surrounded by several officers when he chose to flee the residence. Plaintiff is a male, and Officer Denharder is a female officer. Simply put, the

7

allegations here are not that the canine bit a compliant, non-fleeing female suspect that was already in custody. Plaintiff failed to plead a constitutional violation, and the facts of this case are readily distinguishable from the *sole* case that Plaintiff cited. *See Luna*, 577 U.S. at 12 (directing courts to avoid too much generality in the qualified immunity analysis).

3. 12(b)(6) for Kalamazoo County

Defendants argue that Plaintiff failed to plead a case of action against it in the first amended complaint. In response, Plaintiff's brief only states, "Plaintiff properly stated a claim for excessive force against Defendant Kalamazoo County for improper training, policy procedures, and culture of officers using excessive force." (ECF No. 22 at PID 236). Plaintiff has largely failed to respond to Defendant's motion to dismiss.

The first amended complaint includes one reference to Kalamazoo County in particular. Under Plaintiff's "Count VII Federal Law Claims-All Defendants" heading in the complaint, Plaintiff alleges that "Defendants improper, heinous and deadly actions were caused, acquiesced to, and or contributed to by Defendant KALAMAZOO COUNTY'S improper training, policy procedures and culture of officers using excessive force by their officers." (ECF No. 14 at PID 137).

To properly plead an excessive force claim against a municipality, a plaintiff must "(1) identify the municipal policy or custom, (2) connect the policy to the municipality, and (3) show that [his] particular injury was incurred due to the execution of that policy." *Vereecke v. Huron Valley Sch. Dist.*, 609 F.3d 392, 403 (6th Cir. 2010). Plaintiff's complaint failed to plead any of these elements with any degree of specificity. Plaintiff failed to state a claim

against Kalamazoo County. To the extent Plaintiff intended to sue Kalamazoo County, those claims are dismissed under 12(b)(6).

Defendants Kalamazoo County, Deputies Nichols, Scholten, Holmes, Boysen, and Juszczyk's motion to dismiss is granted. Plaintiff's complaint did not survive Defendants' 12(b)(6) or immunity arguments. Plaintiff failed to address most of the arguments in his brief. The court will dismiss his claims on that ground as well. *See, e.g., Brown v. VHS of Michigan, Inc.,* 545 F. App'x 368, 372 (6th Cir. 2013) (collecting cases where a litigant failed to respond).

B. Motion to Dismiss for Defendant Lindsey Denharder (ECF No. 18)

The court will grant Defendant Denharder's motion for similar reasons. Plaintiff's threadbare complaint lacks sufficient supporting factual circumstances to withstand Defendant's challenge under 12(b)(6). *See Iqbal,* 556 U.S. at 678. Defendant Denharder is also entitled to qualified immunity.

1. 12(b)(6) for Defendant Denharder

Plaintiff's vague references to Defendant Denharder in his amended complaint are not sufficient to survive Defendant's challenge under 12(b)(6). As explained above, much of Plaintiff's amended complaint groups all Defendants together and lacks supporting facts. There are only two individualized references to Defendant Denharder in Plaintiff's amended complaint. Plaintiff alleges (1) "Officer Lindsey Denharder arrived at the scene with K-9 Lex"; and (2) "Plaintiff was knocked to the ground and while being apprehended by multiple officers Defendant Denharder deployed 'K9 Lex' which proceeded to mail, maim, and

viciously attack Plaintiff, wherein he began bleeding profusely from his injuries." (ECF No. 14 at PID 128-29).

In the court's judgment, Plaintiff fails to state a claim upon which can be granted. Simply pleading that an officer arrived on scene and deployed a police canine does not state a claim. There are no supporting facts indicating whether such conduct would give rise to a claim. The complaint does not explain why Defendant Denharder deployed the dog, whether Plaintiff was compliant or fleeing, or whether Plaintiff was even armed. Plaintiff failed to plead facts that this court could construe in his favor. Plaintiff's amended complaint is not well-pled, and the court will reject it. Additionally, the BWC footage indicates that Officer Denharder only deployed the K-9 when Plaintiff was fleeing or struggling with the officers.

2. Qualified Immunity for Defendant Denharder

Defendant Denharder is also entitled to qualified immunity because the sole authority put forth by Plaintiff, *Rainey v. Patton*, 534 F. App'x 391 (6th Cir. 2013), is readily distinguishable from the amended complaint and the body camera footage in this case. As noted above, Officer Denharder's actions are distinct from the allegations in *Rainey*. Here, Plaintiff—a male suspect—was actively fleeing from police. Plaintiff was not detained following a minor traffic violation. Unlike *Rainey*, Defendant Denharder was not much larger than Plaintiff.

"The cases granting qualified immunity to the officer highlight the importance of facts establishing that a suspect has failed to surrender or has yet to be apprehended and has been given the opportunity to avoid an encounter with a dog before its employment." *Rainey*, 534

F. App'x at 397. Plaintiff was warned there was a dog on scene. Plaintiff fled and struggled with the officers. Defendant Denharder is entitled to qualified immunity.

## IV. Conclusion

The court finds that Plaintiff's amended complaint fails to state a claim under 12(b)(6) and that the individual Defendants are entitled to qualified immunity.

**IT IS HEREBY ORDERED** that Defendants' motion to dismiss (ECF No. 16) is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendants' motion to dismiss (ECF No. 18) is **GRANTED**.

**IT IS SO ORDERED.**

Date:  August 9, 2024    /s/ Paul L. Maloney
Paul L. Maloney
United States District Judge